IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Shelley Marie Ivey, | ) | Civil Action No.  8:15-cv-02715-MGL-JDA |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| Carolyn W. Colvin, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for a Report and Recommendation pursuant to Local Civil Rule 73.02(B)(2)(a), D.S.C., and 28 U.S.C. § 636(b)(1)(B).[1]  Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claim for disability insurance benefits ("DIB").  For the reasons set forth below, it is recommended that the decision of the Commissioner be reversed and remanded for administrative action consistent with this recommendation, pursuant to sentence four of 42 U.S.C. § 405(g).

**PROCEDURAL HISTORY**

On February 4, 2011, Plaintiff filed an application for disability insurance benefits ("DIB"), alleging an onset of disability date of May 7, 2007.  [R. 14.]  The claim was denied initially and upon reconsideration by the Social Security Administration ("the Administration").  [R. 54–84].  Thereafter, Plaintiff filed a written request for a hearing and,

---

[1]A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by a magistrate judge.

on July 12, 2013, she appeared with an attorney and testified at a hearing before Administrative Law Judge ("ALJ") Robert C. Allen.  [R. 27–52.]

The ALJ issued a decision on September 11, 2013, finding Plaintiff not disabled under the Social Security Act ("the Act").  [R. 14–20.]  At Step 1,[2] the ALJ found Plaintiff last met the insured status requirements of the Act on December 31, 2010, and had not engaged in substantial gainful activity from the alleged onset date of May 7, 2007, through her date last insured.  [R. 16, Findings 1 & 2.]  At Step 2, the ALJ found Plaintiff had the following severe combination of impairments: degenerative disc disease (DDD), fibromyalgia, arthritis, diabetes and anemia.  [R. 16, Finding 3.]  At Step 3, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  [R. 16, Finding 4.]  Specifically, the ALJ concluded Plaintiff's impairments did not meet the requirements of Listings 1.04(spine), 9.00(diabetes), 4.00(diabetic ketoacidosis), 5.00(intestinal necrosis), 11.00(cerebral edema), 12.00(mood, eating disorders), 1.00(neurovascular disease), 2.00(diabetic retinopathy), 4.00(coronary artery disease), 5.00(diabetic gastroparesis), 6.00(diabetic nephropathy), 8.00(skin infection), 11.00(sensory neuropathies), 12.00(cognitive impairments), and 14.09(inflammatory arthritis).  [R. 16–17.]

Before addressing Step 4, Plaintiff's ability to perform her past relevant work, the ALJ assessed Plaintiff's residual functional capacity ("RFC") and found as follows:

---

[2]The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). The claimant can occasionally climb ramps, stairs, balance, stoop, kneel, crouch, and crawl, but never climb ladders, ropes, or scaffolds.

[R. 17, Finding 5.]  Based on this RFC, the ALJ determined at Step 4 that Plaintiff was able to perform her past relevant work as a billing clerk and administrative clerk.  [R. 19, Finding 6.]  Accordingly, the ALJ concluded Plaintiff was not under a disability, as defined by the Act, at any time from May 7, 2007, through December 31, 2010.  [R. 20, Finding 7.]

Plaintiff requested Appeals Council review of the ALJ's decision, and on December 16, 2014, the Appeals Council declined.  [R. 6–10.]  Plaintiff filed the instant action for judicial review on July 8, 2015.  [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff contends that errors by the ALJ require the decision to be remanded for further administrative proceedings. [Doc. 10.]  Specifically, Plaintiff alleges the ALJ:

1.  failed to adequately assess all of Plaintiff's severe impairments in developing the RFC [*id*. at 4–7]; and,

2.  failed to properly assess Plaintiff's credibility in accordance with the Administration's regulations  [*id*. at 7–10].

The Commissioner contends the decision is supported by substantial evidence and should be affirmed. [Doc. 11.]  Specifically, the Commissioner argues that the ALJ

1.  properly evaluated Plaintiff's impairments at Step 2 [*id*. at 7–10]; and

2.  properly evaluated Plaintiff's credibility under the Administration's regulations [*id.* at 11–14].

3

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963))("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision). Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence.

*See Bird v. Comm'r*, 699 F.3d 337, 340 (4th Cir. 2012); *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano*, 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)). Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court

5

to find the claimant disabled). Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four is usually the proper course to allow the Commissioner to explain the basis for the decision or for additional investigation. *See Radford v. Comm'r*, 734 F.3d 288, 295 (4th Cir. 2013) (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985); *see also Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand."). After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction. *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g). A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's

6

failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[3]  With remand under sentence six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98.  The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings.  *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## APPLICABLE LAW

---

[3]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence.  *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992).  Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect.  *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990).  Accordingly, the Court will apply the more stringent *Borders* inquiry.

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability.  42 U.S.C. § 423(a).  "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.    The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions.  *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims).  The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment.  20 C.F.R. § 404.1520.  Through the fourth step, the burden of production and proof is on the claimant.  *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).  The claimant must prove disability on or before the last day of her insured status to receive disability benefits.  *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969).  If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national

8

economy that the claimant can perform, considering the claimant's age, education, and work experience. *Grant*, 699 F.2d at 191. If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.    *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. § 404.1572(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* § 404.1572(b). If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity. *Id.* §§ 404.1574–.1575.

### B.    *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. *See id.* § 404.1521. When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments. 42 U.S.C. § 423(d)(2)(B). The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them"). Accordingly, the ALJ must make specific and well-articulated findings

9

as to the effect of a combination of impairments when determining whether an individual is disabled. *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments."). If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process." 42 U.S.C. § 423(d)(2)(B).

### C.     *Meets or Equals an Impairment Listed in the Listings of Impairments*

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. § 404.1509, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(d).

### D.     *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant." *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995). At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[4] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work. 20 C.F.R. § 404.1560(b).

### E.     *Other Work*

---

[4]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a).

10

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. *See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992); 20 C.F.R. § 404.1520(f)–(g). To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids"). Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[5] 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *see also Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations). When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines. *Gory*, 712 F.2d at 931. In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work. 20 C.F.R. § 404.1569a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform

---

[5]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. § 404.1569a(a). A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands. *Id.* Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing. § 404.1569a(c)(1).

specific jobs which exist in the national economy."). The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker*, 889 F.2d at 50. For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Id.* (citations omitted).

## II.     Developing the Record

The ALJ has a duty to fully and fairly develop the record. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). The ALJ is required to inquire fully into each relevant issue. *Snyder*, 307 F.2d at 520. The performance of this duty is particularly important when a claimant appears without counsel. *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980). In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* (internal quotations and citations omitted).

## III.     Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). The ALJ may discount a treating physician's opinion if it is

unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. § 404.1527(c).  Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. § 404.1527(c)(2).  An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways.  *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986).  Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  20 C.F.R. § 404.1527(d).  However, the ALJ is responsible for

13

making the ultimate determination about whether a claimant meets the statutory definition of disability. *Id.*

## IV.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 404.1517; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986). The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability. 20 C.F.R. § 404.1517. Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary. *Id.*

## V.    Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis. *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion). First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'" *Id.* (quoting *Craig*, 76 F.3d at 594). Second, "if, and only if, the

14

ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain." *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs." *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990). The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
>
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable

15

> objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence. If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability. Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered. Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990). SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p. *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996). SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485; *see also* 20 C.F.R. § 404.1529(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.    Credibility

The ALJ must make a credibility determination based upon all the evidence in the record. Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria. *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique

advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor.  But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

**RFC and Credibility Determinations**

Plaintiff contends the ALJ's discussion of Plaintiff's RFC failed to adequately address all of the limitations and restrictions associated with Plaintiff's impairments and was simply conclusory and without rationale and support in the record as a whole. [Doc. 10 at 5.] Plaintiff also contends the ALJ erred in failing to properly assess impairments which directly impacted Plaintiff's physical ability to perform basic work activities, such as her lumbar and thoracic disc protrusions which limited her ability to sit for long periods of time and the degenerative joint disease in her ankles which limited her ability to stand and walk. [*Id*. at  6–7; Doc. 12 at 2–3.]

The Commissioner, on the other hand, argues that, although Plaintiff relies on MRI results to support her argument that her lumbar and thoracic disc protrusions and degenerative joint disease in her right foot constituted additional severe impairments, a mere diagnosis is not enough to show that a condition is severe, let alone disabling, under the regulations.  [Doc. 11 at 8.]  The Commissioner contends that, even if the ALJ should have found these impairments to be severe, the error is harmless because the ALJ was required to consider the combined effects of all of a claimant's impairments, severe and non-severe, throughout the subsequent steps of the process; and he did so.  [*Id.* at 9.]

The Court agrees with Plaintiff.

17

### *The ALJ's Analysis*

In determining Plaintiff's RFC, the ALJ followed a two-step process in which he first determined whether there was an underlying medically determinable physical or mental impairment that could reasonably be expected to produce Plaintiff's pain or other symptoms. [R. 17–18.]   The ALJ noted as follows:

> The claimant alleges that she suffers from degenerative disc disease, fibromyalgia, diabetes, and anemia. As a result, the claimant alleges she experiences pain, weakness, and fatigue. The claimant also alleges she has limited strength, will drop things, and has had several falls. Additionally, the claimant alleges that due to her pain she has difficulty sleeping. Despite these allegations, the claimant is able to take care of her personal care, help with household chores, cook simple meals, shop, pay bills, and get on computer. The claimant also is working doing legal transcription that requires her to sit and transcribe five nights a week. Additionally, the claimant is able to take care of her young children. Here, the claimant has described daily activities that are inconsistent with the claimant's allegations of disabling symptoms and limitations, which weakens her credibility.

[R. 18.]

After determining the presence of an impairment or impairments at Step 2, the ALJ evaluated the intensity, persistence, and limiting effects of Plaintiff's symptoms to determine the extent to which they limited Plaintiff's functioning. [R. 18–19.] Following this two-step process, the ALJ considered Plaintiff's underlying physical and mental impairments and the associated medical records to determine her RFC.  [*Id.*]

The ALJ ultimately found that Plaintiff was capable of performing the exertional demands of a range of light work in jobs allowing for the occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling, but never climbing ladders, ropes, or scaffolds.  [R. 19.]

The ALJ explained his consideration of the objective medical evidence as follows:

> Turning to the medical evidence, the objective findings in this case fail to provide strong support for the claimant's allegations of disabling symptoms and limitations resulting from her degenerative disc disease (DDD), fibromyalgia, arthritis, diabetes, and anemia.  In December 2007, the claimant was diagnosed with iron deficiency anemia, but she had improved iron studies and hemoglobin with no evidence of iron overload (Ex. 1F).
>
> The claimant had a history of low back pain and fibromyalgia. She complained of chronic back and joint pain that caused her fatigue and weakness.  The examination in October 2008 showed her muscle strength of the major group in the upper and lower extremities was 5/5.  She had normal muscle tone and bulk in her upper and lower extremities with no fasciculations.  Her deep tendon reflexes were normal and symmetrical. She had no abnormal movements or posturing. Her gait was intact, station and posture was normal, she had a negative Romberg test, and she could tandem walk (Ex. 2F).
>
> In regards to her diabetes, the claimant's representative stated that she was diagnosed in 2007; however, her diabetes was controlled with oral medication and diet modification (Ex. 15E).
>
> As for the opinion evidence, the State agency medical consultants indicated that the claimant was capable of performing the exertional demands of a range light work (Ex. 1A; 4A). The State agency consultants were able to review the entire medical record. The State agency consultants adequately considered the combination of her impairments. Accordingly, the undersigned gave significant weight to the State agency opinions (Social Security Ruling 96-6p).
>
> Therefore, based on the entire record, including the testimony of the claimant, the undersigned concludes that the evidence fails to support the claimant's assertions of total disability. Despite the evidence demonstrating that the claimant has suffered from medically determinable "severe" impairments, the evidence also establishes that the claimant retains the capacity to function adequately to perform many basic activities associated with work. Although the claimant suffers some limitation due to her impairments, and as a result, her capacity to perform work is affected, the undersigned finds that

the claimant retains the residual functional capacity to perform the exertional demands of light work which requires lifting and carrying objects weighing up to 20 pounds; frequently lifting and carrying objects weighing 10 pounds; and standing, walking and sitting for up to six hours in an eight-hour day (20 CFR 404.1567). Additionally, she can only work in jobs allowing for the occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling, but never climbing ladders, ropes, or scaffolds.

[R. 18–19.]

### Discussion

The Administration has provided a definition of RFC and explained what a RFC assessment accomplishes:

RFC is what an individual can still do despite his or her limitations. RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work related physical and mental activities. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule. . . .

SSR 96–8p, 61 Fed.Reg. 34,474–01, at 34,475 (July 2, 1996) (internal citation and footnotes omitted). The RFC assessment must first identify the claimant's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. 404.1545 and 416.945. *See id.* Only after this identification and assessment may RFC be expressed in terms of the exertional levels of work: sedentary, light, medium,

heavy, and very heavy. *Id.* Additionally, the Administration has determined that in assessing RFC, the ALJ

> must consider only limitations and restrictions attributable to medically determinable impairments. It is incorrect to find that [a claimant] has limitations or restrictions beyond those caused by his or her medical impairment(s) including any related symptoms, such as pain, due to factors such as age or height, or whether the [claimant] had ever engaged in certain activities in his or her past relevant work (e.g., lifting heavy weights.) Age and body habitus (i .e., natural body build, physique, constitution, size, and weight, insofar as they are unrelated to the [claimant]'s medically determinable impairment(s) and related symptoms) are not factors in assessing RFC. . . .

*Id*. at 34,476.

To assess a claimant's RFC, the ALJ must consider all relevant evidence in the record, including medical history, medical signs, laboratory findings, lay evidence, and medical source statements. *Id*. at 34,477.  SSR 96–8p specifically states, "The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted ." *Id*. at 34,478.  Thus, an ALJ's RFC assessment will necessarily entail assessing the credibility of any alleged limitations, including assessing the credibility of testimony offered by the claimant.

Plaintiff filed her initial claim for disability alleging the following conditions: carpel tunnel, fibromyalgia, rheumatoid arthritis, antiophosphlipid syndrome, diabetes, scoliosis, mitral valve prolapse, beta thalassemia minor, TMJ, spondylosis of the spine, degenerative disc disease (DDD), degenerative joint disease (DJD) and methylenetetrahydrofolate reductase. [R. 54.]  Plaintiff testified that she had a lot of pain in her right wrist but that she was not sure if it was caused by carpal tunnel, arthritis or fibromyalgia. [R. 31.] Plaintiff also

21

testified that sitting in a chair caused her to experience pain in her back.  [*Id*.]  Plaintiff testified that she had tried to work on a number of occasions but could not due to pain.  [R. 32.]  Plaintiff said she wakes up every morning with pain in her lower back, mid back, feet, ankles, hand and arms.  [R. 34.]

With respect to household chores, Plaintiff testified that her 18-year old daughter did a lot of the heavy-duty work, including laundry, and that she used the Swiffer Sweeper over the kitchen floor.  [R. 40.]  Plaintiff testified that she did a lot of crock pot cooking, but her teenage girls cleaned up and put her two-year old to bed.  [R. 41.]  If she went grocery shopping, her 18-year old accompanied her to do all the lifting and then the children brought all of the groceries inside.  [R. 41–42.]  If her 18-year old was not available, she made a simple breakfast (cereal, fruit and yogurt) for her 2-year old.  [R. 42.]   If she was able, Plaintiff napped during the day or made a phone call and paid a bill for her husband.  [R. 43.]

Plaintiff testified she could sit 10–15 minutes before having to change positions and no more than an hour before having to get up and stretch.  [R. 44.]  She also mentioned she could walk 10–15 minutes at a time and that she had trouble lifting 26 pounds (the weight of her youngest child).  [R. 45.]  The heaviest weight she felt comfortable lifting and carrying with any frequency was between 5–10 pounds.  [R. 46.]  Plaintiff testified that her feet tended to swell and her ankles and feet hurt such that it was difficult to get up from a position and start walking.  [R. 48.]

In considering Plaintiff's alleged impairments, the ALJ found Plaintiff had severe impairments of DDD, fibromyalgia, arthritis, diabetes and anemia.  [R. 16.]  The ALJ found that Plaintiff's impairments failed to meet listing level severity and that, because

fibromyalgia and anemia had no specific listing, they would be considered in the RFC. [R. 17.] As noted above, during the RFC analysis, the ALJ explained his consideration of Plaintiff's alleged disabling symptoms due to DDD, fibromyalgia, arthritis, diabetes and anemia, by explaining that the medical evidence showed improved iron studies and hemoglobin in 2007; 5/5 muscle strength in the upper and lower extremities in 2008, with normal muscle tone and bulk and normal and symmetrical deep tendon reflexes. [R. 18–19.] The ALJ also noted that Plaintiff's diabetes was properly controlled with oral medication and diet modification. [R. 19.]

The regulations are clear that an ALJ's RFC assessment will necessarily entail assessing the credibility of any alleged limitations, including assessing the credibility of testimony offered by the claimant. SSR 96–7p provides, "[i]f an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." 61 Fed.Reg. at 34,485; *see also* 20 C.F.R. §§ 404.1529(c)(1)-(c)(2), 416.929(c)(1)-(c)(2) (outlining evaluation of pain). As stated in SSR 96–7p, the provisions of 20 C.F.R. §§ 404.1529(c) and 416.929(c) set forth the following factors that the ALJ must consider in addition to the objective evidence when assessing a claimant's credibility:

1.      The individual's daily activities;

2.      The location, duration, frequency, and intensity of the individual's pain or other symptoms;

3.      Factors that precipitate or aggravate the symptoms;

4.      The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5.     Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6.     Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 or 20 minutes every hour, or sleeping on a board); and

7.     Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

Additionally, the ALJ must consider "the entire case record," including all relevant evidence, such as the medical evidence. *See* SSR 96–7p, 61 Fed.Reg. at 34,484.

Although this Court recognizes that the ALJ is not required to specifically refer to every piece of evidence in his decision, the ALJ must provide a statement of the case setting forth a discussion of the evidence and explaining reasons upon which the determination is based. *See Reid v. Comm'r*, 769 F.3d 861, 865 (4th Cir. 2014).  Here, the ALJ's decision did not sufficiently explain his reasons for discounting or ignoring many pieces of medical evidence in the record.  The ALJ, only in a cursory manner, explained his consideration of certain impairments and his consideration of the medical evidence.  And, while the ALJ clearly discredited Plaintiff's subjective testimony regarding her pain, the Court finds that the ALJ failed to discharged his duty to address Plaintiff's subjective testimony by describing medical and non-medical evidence he considered in discounting her testimony as required by SSR 96–7p.

For instance, the ALJ failed to address Plaintiff's testimony regarding the location duration, frequency and intensity of her pain and symptoms; failed to address the long history of medical evidence documenting her pain complaints; and failed to explain his consideration of Plaintiff's claims of factors precipitating or aggravating her pain such as walking and sitting for periods of time.  The ALJ appears to have discounted all of Plaintiff's

24

pain complaints by simply finding that Plaintiff was working doing legal transcription requiring her to sit and transcribe five nights as week; was able to take care of a young child; and engaged in daily activities inconsistent with disabling pain.  [R. 18.]

Upon review of the Plaintiff's testimony, however, the Court notes that, contrary to the ALJ's finding, Plaintiff's testimony was that she had been doing transcription for a couple of weeks but that she was very slow due to pain in her right wrist and back pain she experienced from sitting in the chair for periods of time.  [R. 30–31.]  Plaintiff testified that she averaged about $1.70/$1.90 an hour because it was taking her so much time to transcribe. [R. 32.]  Furthermore, Plaintiff testified that she made simple breakfasts for her youngest when her oldest daughter was not available to do so; otherwise, her oldest daughter took care of her baby.  [R. 41–42.]  In any instance, the only medical evidence referenced by the ALJ in discounting Plaintiff's low back pain and fibromyalgia appears to be an exam from October 2008 showing 5/5 muscle strength, normal muscle tone and bulk, no fasciculations and normal gait.  [R. 19.]  And while the ALJ is not required to mention every piece of medical evidence of record, there is certainly a duty to explain his consideration of the medical evidence of record which would appear to support Plaintiff's claimed limitations.

The medical evidence of record shows that Plaintiff was diagnosed with, and had been treated for myalgia, right hip pain, cervicalgia, and thoracic pain as far back as November 2005.  [*See* R. 641.]  Pain complaints and treatment by Dr. Jo Reeves ("Dr. Reeves") continued from November 2005 through November 2012.  [*See* R. 641–57.] During these years, Plaintiff complained of great right arm pain, weakness from the shoulder girdle down into the forearm; mild right hip pain; stiffness and soreness in the

25

neck; pain in the mid-back and between the shoulder blades; right arm weakness; mild pain in the wrists;  mild discomfort in the right hip; mild tenderness in the upper traps bilaterally, C4-C6 on the left; tenderness at C3-C6 and T3-T8 with tenderness in the left trapezius and left rhomboid; headaches and left TMJ pain; moderate amounts of pain at L2 to L5 and the SI's bilaterally with painful L-ROM in all planes; moderate pain at C1 to C3 on the right and minor pain at T3-T4, L2 to L3 and the ilium on the left, C4-C6, T5-T7, and L4-L5 bilaterally; and a small degree of edema at C1-C2 on the right. [*See id.*]

An MRI of Plaintiff's lumbar spine in August 2007 by Dr. Robin Daum-Kowalski ("Dr. Kowalski") showed left foraminal disc protrusion at L2-3. [R. 394.]  An MRI of the thoracic spine by Dr. Kowalski resulted in findings of left paracentral disc protrusion at T5-6; DDD with central and right paracentral disc protrusion with superior extrusion at T6-7; right paracentral disc protrusion at T7-8; and right paracentral disc protrusion at T8-9.  [R. 395.] An MRI of Plaintiff's lumbar spine dated November 2008, to evaluate complaints of limb numbness, showed left foraminal protrusion at L2-3 causing mild effacement of the existing left L2 nerve root and lumbar scoliosis.  [R. 389.]

Between January 2010 and January 2012, Plaintiff reported to Cayce Chiropractic with complaints of constant moderate pain bilaterally in the area of her lumbar spine and with moderate constant pain bilaterally in the upper back and neck region.  [R. 543–53.] Treatment notes indicated that Plaintiff's chronic condition suffered an acute moderate exacerbation and she was assessed with segmental/somatic dysfunction in the sacral, lumbar, thoracic and cervical spine.  [*See id*.]  Beginning in May 2010, Plaintiff also complained of a moderate marked increase in right elbow pain.  [R. 544.]  Treatment notes in June 2010 and December 2010 indicated Plaintiff had "entered the chronic stage" and

was suffering from an acute exacerbation of a chronic condition.  [R. 545, 548.]   In July 11, 2011, Plaintiff began experiencing new pain complaints in the left shoulder and anterior left knee after falling getting out of her car. [R. 551.]

Medical evidence of record dated January 17, 2011, through March 28, 2011, showed that Plaintiff presented to Andrew Fields, D.C. ("Dr. Fields") of Fields Chiropractic Clinics, P.A., with low back stiffness and intermittent radicular pain in the right buttock which she described as shooting and throbbing and which had existed for several months prior to her visits.  [*See* R. 361–78.]  Plaintiff was assessed with cervicothoracic segmental dysfuntion; low back pain; and lumbar sprain/strain.  [*See id.*]

In January 2010, Plaintiff was seen at the USC School of Medicine, Department of Internal Medicine, Division of Rheumatology, by Barbara Gilleylen, ANPC, a rheumatology nurse practitioner ("Nurse Gilleylen") for an evaluation for systemic lupus erythematosus at the request of Dr. Leland McElveen ("Dr. McElveen").  [R. 573.]  Treatment notes indicated Plaintiff complained of being fatigued with loss of stamina; stated that there was an area on her hand and arm that will "give out" because it is painful and weak; and stated that her pain migrates from her hand to her shoulders, elbows and back, but that her back symptoms do improve as the day progresses.  [*Id*.]  Plaintiff reported having multiple areas where she has swelling and pain.  [*Id*.]  On neurological exam, it was noted that muscular tender points for fibromyalgia were positive in the trapezius, sternocleidomastoid and hips.  [R. 575.] Nurse Gilleylen ordered numerous lab studies to narrow Plaintiff's diagnosis.  [*Id*.]  Plaintiff was ultimately assessed with Autoimmune syndrome and fibromyalgia syndrome.  [R. 590.]  In a June 2012 follow up with the rheumatology department for her autoimmune syndrome (consisting of hemolytic anemia, positive ANA in tow different patterns, and

27

anticardiollpin antibody syndrome), Plaintiff continued to complain of foot and arm numbness and tingling, and mid back pain. [R. 682.]

Treatment notes from Midlands Orthopaedics documented Plaintiff's continued treatment for low back, left hip, and leg pain in July 2012, as well as associated symptoms of weakness and numbness in the left leg, tingling and swelling in the ankles bilaterally, and radiation down her leg. [R. 661–62.] An MRI examination revealed spondylotic changes, and a disc bulge on the left at L2-3 with mild foraminal stenosis and scoliosis. [R. 663.] Treatment notes also indicated that Plaintiff had multiple MRI scans in 2008 which showed a degenerative scoliosis of the lumbar spine with a wedge vertebra at approximately L3 and some nerve root compression seen at that time. [*Id*.] Ultimately Dr. Ivan Lamotta ("Dr. Lamotta") found Plaintiff was not a surgical candidate because the MRI exam failed to reveal any significant nerve compression and that non-operative care and weight loss was recommended. [R. 664.]

In light of the medical evidence briefly summarized above, and the ALJ's lack of explanation regarding his consideration of the same, the Court is constrained to find that the ALJ's credibility analysis, and thus the RFC, is not supported by substantial evidence. The ALJ provided no path for the Court to follow his reasoning in deciding to discount Plaintiff's pain complaints in light of the evidence of record appearing to support her alleged complaints. Furthermore, the ALJ appears to have misstated Plaintiff's testimony regarding her work transcribing and her testimony regarding her ability to care for her youngest child. In any instance, while the ALJ's finding that Plaintiff could perform a limited amount of light work may have been correct, the Court is unable to follow the ALJ's reasoning based on the discussion provided in his written decision.

Additionally, upon review of the medical evidence, the Court notes that, on September 5, 2012, Disability Determinations Services ("DDS") in New York performed a case analysis in which the agent determined that Plaintiff "needs less than sedentary RFC to support allowance of AOD. MER contains ortho imaging back to 2007, and MRI brain 11/08. Progress notes i/c/w ortho 2010-2011 in MER also." [R. 627.] On September 29, 2012, Dr. Mary McLarnon, on behalf of DDS New York, affirmed the RFC written on June 15, 2012, in light of "AOD 2007, pre morbid obesity, benign occipital cerebral lesion, FBM, mild foraminal compression L2-3 with back pain, DM, and CTS." [R. 633.] It is unclear how the ALJ reconciled these reports with his RFC finding.

Furthermore, on May 1, 2013, Thomas T. Blake, Jr., DC, ("Dr. Blake") with the Life Wellness Center, wrote a letter on Plaintiff's behalf noting his office had treated her since April 17, 2012, her major pain complaints, the fact that her pain caused extreme difficulty in performing normal daily activities, and outlining her other diagnosed impairments of carpal tunnel syndrome, TMJ disorder, fibromyalgia, diffuse osteo-arthritis throughout the spine, andiphospholipid syndrome, MTHFR and type-2 diabetes. [R. 725.] Based on all of Plaintiff's pre-disposing factors, Dr. Blake estimated Plaintiff's disability for her work environment, based on AMA guidelines, as a class 3 (moderate impairment-between 25%–50%). [R. 726.] And, contrary to regulations and the Treating Physician Rule, there is no mention in the ALJ's decision of his consideration of (or weight assigned to) Dr. Blake's opinion, the sole opinion of record from a treating physician.

In light of the lack of discussion by the ALJ regarding his consideration of the medical evidence of record in disregarding Plaintiff's complaints of limitations due to pain, his failure to explain his consideration of evidence of record contradicting his RFC finding,

and his failure to weigh the sole treating medical opinion of record regarding Plaintiff's disability, the Court finds the ALJ's decision is not supported by substantial evidence.

**Plaintiff's Remaining Arguments**

Upon remand, the Commissioner should take into consideration Plaintiff's remaining allegations of error.

**CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends the Commissioner's decision be REVERSED and the case be REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative action consistent with this recommendation.

**IT IS SO RECOMMENDED**.

s/Jacquelyn D. Austin
United States Magistrate Judge

July 26, 2016
Greenville, South Carolina